```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

KATHRYN RAE TOWING, INC.,                CIVIL ACTION

VERSUS                                   NO: 11-2936

SCOTT BURAS                              SECTION: R(4)

## ORDER AND REASONS

Plaintiff, Kathryn Rae Towing Inc. ("KRT"), moves for summary judgment against defendant, Scott Buras, on the issue of maintenance and cure.

### I.   BACKGROUND

Scott Buras's career as towboat operator has been plagued by back pain, and in late October 2010, he underwent an interbody discectomy and fusion at the L3-L5 levels of his lower spine. In March of 2011 Buras sought employment at Webber Marine.[1] As a prerequisite to employment, Webber Marine required Buras to take a physical evaluation.[2] For Buras to pass, his surgeon, Dr. Mitchell, would have to issue him a work release.[3] Buras produced a document that purported to release him to work. It was on Dr. Mitchell's stationery and signed by Dr. Mitchell.[4] The document,

---

[1]   R. Doc. 17-2 at 37.

[2]   *Id.* at 24-26.

[3]   *Id.* at 26.

[4]   R. Doc. 17-2 at 44.

however, was a fake. Buras fabricated it "so he could work."[5] Dr. Mitchell never issued Buras a work release.[6] In fact, in January of 2011, Dr. Mitchell stopped treating Buras altogether because Buras had "too many issues."[7] Dr. Mitchell informed Webber Marine's physical therapist that he "dismissed Mr. Buras and [did] not want to have [] anything to do with him."[8] Webber Marine did not hire Buras because he was never medically cleared.[9]

Meanwhile, Buras continued to complain of back pain and receive treatment. He sought treatment with Dr. Fred Defrancesh on February 22, 2011 and complained that he was "severely limited" from working.[10] Dr. Defrancesh prescribed him Oxycodin, Hydrocodone, Robaxin, and Sulindac.[11] He also continued to seek employment. In April of 2011, three days after his last visit with Dr. Defrancesh, KRT hired Buras as a temporary replacement pilot aboard the M/V Robert. Because KRT hired Buras for a temporary and not a permanent position, KRT did not require Buras

---

[5] *Id.* at 26; R. Doc. 17-4 at 4.

[6] R. Doc. 17-2 at 26.

[7] *Id.* at 18.

[8] *Id.* at 25.

[9] *Id.* at 36.

[10] R. Doc. 17-3 at 4.

[11] *Id.* at 33.

to undergo a physical or answer questions about his physical condition. Buras remained silent about his medical condition when KRT hired him. On April 1, 2011, his first day of employment for KRT, Buras slipped on a ladder and was injured.

KRT now claims that Buras's failure to disclose his back problems was intentionally deceptive and precludes him from recovering maintenance and cure. In response, Buras concedes that he fabricated a work release when he sought employment at Webber Marine. He also admits that before working for KRT he "had not been released to return to any type of employment," had not seen any record releasing him to work before being hired by KRT, and that Dr. Mitchell's office never advised him that he was released to return to work.[12]

Buras now maintains that after the accident his lawyer informed him that there was "some release in February of 2011 in Dr. Mitchell's file,"[13] before he accepted employment with KRT. Buras has been unable to produce this release. Buras also maintains that he "felt [he] was able to go to work" before KRT hired him.[14]

On January 17, 2012 Buras filed a complaint seeking, *inter alia*, maintenance and cure from KRT. In November, 2011, KRT filed

---

[12]   *Id.* at 21-22.

[13]   *Id.*

[14]   R. Doc. 18-1 at 24, 28.

this declaratory judgment action and moves for summary judgment on the grounds that Buras's nondisclosure of his injuries eliminates its obligation to pay Buras maintenance and cure benefits.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). The Court must draw reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation marks omitted).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must

4

come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991)(citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id.* at 325. *See also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'")(citing *Celotex*, 477 U.S. at 332).

**III. DISCUSSION**

**A. The *McCorpen* Defense**

Seamen have a right to maintenance and cure for injuries that they suffer in the course of their service on a vessel, regardless of whether the shipowner was at fault or the vessel was unseaworthy. *See O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 41-42 (1943); *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir. 1995). "Maintenance" is the right of a seaman to food and lodging if he becomes injured during the course of fulfilling his duties to the ship. *See Guevara*, 59 F.3d at 1499. "Cure" is the right to necessary medical services. *Id.* Before a plaintiff can recover maintenance and cure, he bears the burden of alleging and proving the following facts: (a) his engagement as a seaman; (b) that his illness or injury occurred, was aggravated, or manifested itself while in the ship's service; (c) the wages to which he may be entitled; and (d) the expenditures or liability incurred by him for medicines, nursing care, board, and lodging. *See Foster v. Brian's Trans. Serv., et al.*, No. 91-4421, 1993 WL 114528, at *2 (E.D. La. 1993) (citing Martin Norris, 2 *The Law of Seamen* § 26.21 at 53 (Supp. 1992)).

Maintenance and cure may be awarded "even where the seaman has suffered from an illness pre-existing his employment." *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d at 548. Yet, there is a "general principle that it will be denied where he knowingly or

fraudulently conceals his illness from the shipowner." *Id.*; *Bodden v. Prof'l Divers of New Orleans, Inc.*, No. 01-795, 2001 WL 1223589, at *2 (E.D. La. 2001) (discussing *McCorpen* defense).

For a shipowner or employer to rely on this legal defense, known as the *McCorpen* defense, to deny a seaman's maintenance and cure claim, the employer must establish: (1) that the seaman has intentionally misrepresented or concealed medical facts; (2) the misrepresented or concealed facts were material to the employer's hiring decision; and (3) there exists a causal link between the pre-existing disability that was concealed and the disability suffered during the voyage. *Id. See also Brown v. Parker Offshore Drilling*, 410 F.3d 166, 171 (5th Cir. 2005) (finding *McCorpen* defense established).

**B. The *McCorpen* Defense Applies**

KRT has established each element of the *McCorpen* defense as a matter of law.

**(1) Intent to Conceal**

The *McCorpen* defense applies in two circumstances. In the first circumstance, the employer requires a pre-employment medical examination or interview, and the seaman loses his claim of maintenance and cure if he "intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired." *McCorpen*, 396 F.2d at 549. In the second circumstance, the employer does not require a pre-employment

7

medical examination or interview. In order to retain his right to maintenance and cure under these circumstances, "the seaman must disclose a past illness or injury only when in his own opinion the shipowner would consider it a matter of importance." *Id.* The Fifth Circuit has noted that the "intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination." *Brown*, 410 F.3d at 175; *see also In re L.S.K. Towing Inc.*, NO. 94-4134, 1995 WL 350039, at *2 (E.D. La. June 6, 1995) (granting summary judgment on the *McCorpen* defense).

KRT did not require Buras to undergo a pre-employment examination or interview.[15] As a result, KRT will have to pay Buras maintenance and cure unless it can show that "the seaman could reasonably be expected to have considered his medical history a matter of importance," and there are not "reasonable grounds for the seaman's good faith belief that he was fit for duty." *McCorpen*, 396 F.2d at 549.

The record is clear that Buras could reasonably expect his history of back injuries and back surgery to be a matter of importance to his future employer. His behavior while seeking employment is proof that he knew, or at least should have known, that his medical history was important to KRT's employment decision.

---

[15] R. Doc. 18-1 at 36-37.

First, Buras knew that five months before KRT hired him, he had undergone a discectomy and a two-level surgical fusion in his lumbar spine. When he applied to Webber Marine five months later, Buras forged a doctor's note from his back surgeon purporting to clear him to work.[16] This was days before he was hired by KRT. Subsequently, Webber Marine did not hire him because he lacked medical clearance. Buras's surgery, Weber Marine's decision not to hire Buras because he lacked medical clearance, and Buras's forgery suggests (1) that he knew his medical condition was a barrier to future employment and (2) that he did not believe he had the requisite clearance.

Second, Buras admits that Webber Marine's inquiry into his medical history was not unique among employers. "Prior injuries" Buras agreed, "would be [] important to the decision of anybody to hire [him] to be a tugboat captain."[17] In fact, Buras had done a pre-employment physical for "just about every company" during his career.[18]

Buras counters that his disclosure of his medical history, including his back condition, to other prospective employers is evidence that he did not lie or misrepresent his medical history

---

[16]   R. Doc. 17-2 at 44.

[17]   R. Doc. 17-2 at 29.

[18]   *Id.* at 27.

to KRT.[19] This argument fails, as his disclosures to other employers are another indication that he knew his medical condition was important to any employment decision. In short, as Buras has said, he knew that "prior injuries might affect [employers'] decision to hire [him]."[20] Buras also candidly admitted that he would "lie to support [his] family."[21]

Next, Buras contends that there was "reasonable grounds for the [his] good faith belief that he was fit for duty." *McCorpen*, 396 F.2d at 549. Buras makes three arguments, all of which are belied by the evidence in the record.

First, Buras argues that "he was of the understanding that he had been released to return to employment in February 2011, before he was hired by KRT."[22] But in his deposition Buras discussed whether anyone from Dr. Mitchell's office had ever released him to work following his surgery:

> [A]fter the surgery Mark had replied six to eight months and supposably [sic] he released me on the second month. They got it in the record somewhere.[23]

---

[19]   R. Doc. 18 at 5.

[20]   *Id.* at 28.

[21]   R. Doc. 17-2 at 16.

[22]   R. Doc. 18 at 4.

[23]   R. Doc. 18-1 at 23. Six to eight months after Buras's October 25, 2010 surgery would be the end of April to the end of June, 2011. Buras was hired on or just before April 1, 2011. The

Buras has not produced this record releasing him to work. Importantly, Buras learned about the alleged record's supposed existence only after he consulted with his lawyer after the accident at KRT.[24] It was his attorney who told him that "there was some release in February 2011 in Dr. Mitchell's file."[25]

Even assuming that this record releasing Buras did exist in February 2011, Buras learned about it *after* his accident. Buras concedes that he had not seen any record releasing him to work before KRT hired him.[26] Accordingly, this "release" could not have supplied a reasonable grounds for his good faith belief that he was fit for duty when he was hired by KRT; he did not know it existed until after he was hired.

Second, Buras argues that since his treating physician, Dr. DeFrancesch, never restricted him from work, he had reasonable grounds to believe he was fit for duty. Dr. DeFrancesh never restricted Buras but he also never approved him. The issue simply "didn't come up" during his treatment.[27] Although Webber Marine's physical therapist instructed Buras that he needed a release from

---

earliest release date had not elapsed when he was hired by KRT.

[24]   *Id.* at 24.

[25]   *Id.*

[26]   R. Doc. 17-2 at 21-22.

[27]   R. Doc. 18-1 at 30.

11

a doctor before he could return to work,[28] Buras never solicited Dr. DeFrancesh's opinion on his ability to return to work. Buras could not have reasonably equated Dr. DeFrancesch's silence as a work release. In fact, Buras had visited Dr. DeFrancesh on March 29, 2011, only days before being hired by KRT. At that visit, Buras reported his back pain had increased from his previous visits and was a "seven out of ten."[29] His increased pain, that Dr. DeFrancesh prescribed him pain narcotic medication, and his concession that he "had not been released to return to any type of employment" before being hired by KRT, do not provide reasonable grounds for him to believe he was fit to work.[30]

Third, Buras argues that he sincerely believed he was fit for work: "[I]f I didn't feel capable of doing the job, I wouldn't have went to work."[31] This argument misses the point. Buras's subjective belief about his own health must be reasonable to escape the application of *McCorpen* in the face of a failure to disclose a past injury. *See Guillory v. Northbank Towing Corp.*, No. 92-0149, 1993 WL 721991, at *2-3 (W.D. La. June 25, 1993) (holding that a seaman's concealment of medical history was intentional despite his own statement that he felt his past

---

[28]   R. Doc. 17-2 at 26.

[29]   R. Doc. 17-3 at 14.

[30]   R. Doc. 17-2 at 21.

[31]   R. Doc. 18-1 at 27.

medical history was of "no importance.") Nothing in the record supports a reasonable belief that Buras could return to work.

Finally, Buras's reliance on *McGhee v. Pride Offshore Incorporated*, No. 07-0476, 2007 WL 3025050 (E.D. La. Oct. 12, 2007), is also misplaced. *McGhee* declined to apply the *McCorpen* defense when a seaman began experiencing a medical condition *after* he was hired and therefore could not have been concealed at the time of his hiring. *McGhee*, 2007 WL 3025050, at *2. Unlike in *McGhee*, Buras's condition was present before he was hired.

In sum, the evidence in the record establishes that Buras "could reasonably be expected to have considered his medical history a matter of importance," and that there are not "reasonable grounds for [his] good faith belief that he was fit for duty." *McCorpen*, 396 F.2d at 549. Therefore, KRT has established that Buras's concealment of his medical history was intentional.

**(2) Materiality**

KRT has also established the materiality of Buras's non-disclosed medical history. The Fifth Circuit has held that back injuries less severe than Buras's rise to the level of materiality required to establish the *McCorpen* defense. *Jauch v. Nautical Servs. Inc.*, 470 F.3d 207, 213 (2006) (per curiam) ("Past instances of back injury, some severe enough to require extensive treatment, are certainly facts material to Nautical's

13

decision to hire Jauch as a deckhand."). A "history of back injuries is the exact type of information sought by employers" especially where "[a seaman], by his own admission, realized that information about his back condition had been important to one of his past employers." *Brown*, 410 F.3d at 175.

Buras's condition is equally serious. He had complex back surgery and was still experiencing significant pain days before he was hired. KRT has testified that had it known of Buras's condition,it would not have hired him without a work release.[32] Disclosure of Buras's condition, then, would have "either prevented his employment or at least delayed it." *Jauch*, 470 F.3d at 213. Further, all of the evidence of Buras's knowledge that his medical history was material–his forgery of medical records, past disclosures, and continuous treatment–applies to this element of the *McCorpen* defense. *See* Section III.B.1. Accordingly, Buras's medical history was material to KRT's decision to hire him.

### (3) Causal Link

KRT has also established a "causal relationship" between Buras's preexisting injuries and his current injuries. *Brown*, 410 F.3d at 176. Buras's had back surgery and prior to working for KRT, he reported pain in his lower back and radiating pain down

---

[32] R. Doc. 17-5 at 9.

his left leg.[33] Dr. DeFrancesh referred to this pain as a "classic L5 pattern distribution."[34] Following the accident, on May 3, 1011, Buras returned to Dr. DeFrancesh for treatment. Buras, however, did not mention the accident to Dr. DeFrancesh, and Dr. DeFrancesh's findings on Buras's back problems and pain were similar to his previous condition.[35] His next visit was to a new doctor, Dr. Shamsnia, on November 2, 2011. At that visit, Buras made "quite similar [] complaints" of "low back pain, with pain radiating down in his left leg."[36] Buras returned to Dr. Shamsnia on December 13, 2011 again complaining of "low back pain, radiating down to his left hip and left leg."[37] In Dr. Shamsnia's January 25, 2012 report, he states "this patient has history of prior back injury primarily at L3-L4 and L4-L5 levels with operations in this region with good result. A post April 2011 accident has shown new pathologies at the L5-S1 and L2-L3 regions."[38]

KRT need not prove that Buras's preexisting injuries are the "sole causes" of his current injuries or that the "present injury

---

[33] R. Doc. 17-3 at 21, 18.

[34] *Id.*

[35] R. Doc. 17-3 at 18.

[36] R. Doc. 17-8 at 2.

[37] *Id.* at 13.

[38] R. Doc. 18-1 at 51.

be identical to the previous injury." *Id.* (quoting *Quiming v. Int'l Pac. Enters., Ltd.*, 773 F. Supp. 230, 236 (D. Haw. 1990)). Instead, courts have found a causal connection whenever the injury complained affects the same body part as the injury that preexisted the seaman's employment. *See, e.g.*, *Brown*, 410 F.3d 166 at 176 (finding a causal connection where seaman suffered a new herniated disk that did not preexist his employment because his "injuries were to the same location of the lumbar spine"); *Johnson v. Cenac Towing*, 599 F. Supp. 2d 721, 728-729 (E.D. La. 2009) (noting that "the *McCorpen* defense will succeed if the defendant can prove that the old injury and the new injury affected the same body part" and citing cases applying the "same body part" test).

In *Weatherford v. Nabors Offshore Corp.*, No. 03-0478, 2004 WL 414948(E.D. La. Mar. 3, 2004), the Court granted summary judgment on the *McCorpen* defense and held that a causal connection existed when the seaman complained of lower back pain in the same region he previously injured. *Weatherford*, 2004 WL 414948, at *3 ("Where plaintiff claims an injury in the exact same area of the back as was previously injured, the causal connection is clear."). Summary judgment was also granted in *Fox v. Plaquemines Parish Gov't*, No. 99-748, 1999 WL 1243065 (E.D. La. Dec. 17, 1999), when "plaintiff's prior back problems involved lower back injures involving the L5-S1 disc and that his

16

present problems also involved the L5-S1 disc, *as well as others*." *Fox*, 1999 WL 1243065, at *3 (emphasis added). Just as in *Weatherford* and *Fox*, both doctors who treated Buras after his accident agreed that his post-accident complaints were similar to his previous complaints.

That Dr. Shamsnia identified "new pathologies" since the accident does not break this obvious connection between Buras's past back problems and his current back problems. The new pathologies that Dr. Shamsnia identified, L5-S1 and L2-L3, are both lower back problems in the same location as his previous injuries. While the precise lumbar vertebrae injured may not be identical to Buras's previous diagnoses, Buras's complaints, as Dr. Shamsnia admitted, were "quite similar."[39] *Cf. Brown*, 410 F.3d at 176 (holding a causal connection existed even where there was no proof that the seaman suffered a herniated disc before being hired but did complain of injuries to the "same location of the lumbar spine"); *Johnson*, 599 F. Supp. 2d at 728-29 (noting that "[t]he inquiry is simply whether the new injury is related to the old injury, irrespective of their root causes").

Courts have repeatedly held that summary judgment is warranted where the seaman complains of back injuries that are similar to his preexisting back problems. *See*, e.g., *Guillory v. Northbank Towing Corp.*, No. 92-0140, 1993 WL 721991, *3 (W.D. La.

---

[39] R. Doc. 17-8 at 7.

June 25, 1993) (granting summary judgment where claim was for a herniated disc at the same level involved in a seaman's previous injuries); *Keys v. Halliburton Co.*, NO. 88-1523, 1989 WL 54244, *3-5, (E.D. La. May 17, 1989) (granting summary judgment and finding a causal connection when "both injuries at issue affect[ed] the low back"). The evidence in the record establishes that Buras's complaints of back and leg pain following his accident are substantially similar to those he complained of before his accident. Accordingly, a connection exists between the withheld information and his back injuries. KRT has established all three elements of the *McCorpen* defense as to his back injuries.

**IV. CONCLUSION**

Accordingly, KRT's motion for summary judgment is GRANTED and Buras is not entitled to maintenance and cure for his back injuries.

New Orleans, Louisiana, this 7th day of January, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE